IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TIMOTHY LEE COLES,

    Petitioner,

v.                         Civil Action No. 3:11CV194

G.K. WASHINGTON,

    Respondent.

**MEMORANDUM OPINION**

Timothy Lee Coles, a Virginia inmate proceeding pro se and in forma pauperis, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition").  Coles challenges a conviction for a disciplinary infraction received while an inmate at Buckingham Correctional Center ("BCC").  Respondent has moved to dismiss the § 2254 Petition.  (Docket No. 18.)  Coles has responded.  The matter is ripe for disposition.

## I.  FACTUAL AND PROCEDURAL HISTORY

### A.  The Disciplinary Offense Report

On November 28, 2009, Coles received a handwritten Disciplinary Offense Report stating that Correctional Officer Lewis ("Officer Lewis"), a female officer, witnessed Coles "sitting on the bottom bunk making lewd and obscene gestures

towards [Officer Lewis] while looking into the control room."[1] (Mem. Supp. Mot. Dismiss Attach. 1, at 1–6 ("Edmonds Aff.") Encl. B, Disciplinary Offense Report 1.)[2]

**B.   Coles's First Hearing**

On December 8, 2009, Inmate Hearing Officer ("IHO") McNeely presided over Coles's first hearing. Coles entered a plea of "no plea." (Id. at 2.) Officer Lewis testified that "she clearly saw [Coles] through the door of his cell, sitting on the bottom bunk masturbating and flesh was seen." (Id.)

Coles asserts that the disciplinary "report did not provide enough information clear enough to support facts sufficient to permit me the opportunity to prepare a defense, and . . . I were denied my witnesses." (Mem. Supp. § 2254 Pet. 2.) Witness request forms submitted by Coles on November 28, 2009 reflect that Coles wished to call two witnesses to testify that his cell

---

[1] The Court has corrected the capitalization in quotations to the parties' submissions.

[2] Respondent submits the affidavit of Larry T. Edmonds, BCC's warden. Respondent appended to Edmunds's affidavit several enclosures labeled A through G. Enclosures B and F are an amalgamation of several different documents and are not sequentially numbered. Accordingly, the Court will refer to the documents in these enclosures (B and F) by document title and page number. Enclosure B includes two Witness Request Forms, one for Inmate Jackson and one for an unknown inmate. The Court will refer to these documents as "Jackson Witness Request Form" and "Unknown Witness Request Form" respectively.

door was open no more than two to three inches at the time of the alleged incident. (Edmonds Aff. Encl. B, Unknown Witness Req. Form, Jackson Witness Req. Form.) IHO McNeely denied these witness requests as "NOT relevant to the offense." (Id.) IHO McNeely found Coles guilty of the charged offense and sentenced him to the loss of 180 days of good time credits and 30 days isolation.[3]

Coles appealed this ruling to the BCC Warden, L.T. Edmonds. Warden Edmonds responded to Coles's appeal by stating that "[Warden Edmonds] attempted to review the recording of [Coles's] disciplinary hearing. However, evidently due to problems with the CD[, Coles's] hearing was not recorded." (Id. Encl. C.) Accordingly, Warden Edmonds ordered a re-hearing.

**C.  Coles's Second Hearing**

On January 14, 2010, Coles was served with a typed Disciplinary Offense Report containing the same information stated in the November 28, 2009 handwritten disciplinary report. (Id. Encl. D 1.) On January 14, 2010, Coles received notice that his re-hearing would take place on January 24, 2010. Coles states that,

---

[3] IHO McNeely noted in his decision that the severity of Coles's penalty was "due to [Coles's] past history of this offense." (Edmonds Aff. Encl. B, Disciplinary Offense Report 2.)

at this instance, it were more difficult for me to
prepare a defense due to I did not know the grounds at
the time of the serving of the [January 14, 2010
Disciplinary Offense Report] in which the rehearing
were based on and I only had 48 hours to submit
requests for witnesses, documentary evidence, and
etcetera:  nor to build a defense around the grounds
such rehearing was based on before and during the
hearing.

(Mem. Supp. § 2255 Pet. 3.)

On January 24, 2010, IHO Patton held the second hearing.
Officer Lewis again testified, this time stating that "she
clearly saw T. Coles through the door of his cell.  He was
masturbating and [she] saw flesh."  (Edmonds Aff. Encl. D 2.)
IHO Patton found Coles guilty and imposed the same penalty
imposed in the first hearing.  (Id.)

Coles appealed IHO Patton's decision to Warden Edmonds.  As
before, Warden Edmonds could not review the audio CD of the
disciplinary hearing due to technical difficulties and ordered a
third disciplinary hearing.  (Id. Encl. E.)

D.   **Coles's Third Hearing**

On February 18, 2010 Coles received a third Disciplinary
Offense Report which was identical to the second Disciplinary
Offense Report.  IHO Patton conducted Coles's third disciplinary
hearing on March 2, 2010.  Coles avers that he requested to
review the CD recordings of his first two hearings and that IHO

4

Patton denied this request.[4]   (Mem. Supp. § 2254 Pet. 11.)
According to Coles, Officer Lewis stated at the third hearing
that "she saw accused through a '3' inch crack in the cell door
and that flesh were clearly seen masturbating looking toward the
control booth [where she was stationed]."[5]   (Id. at 12.)   "Based

---

[4] Coles claims that this denial did not result from the fact
that the first two hearings, through technical error, were not
recorded.   Rather, Coles contends that his request was denied,

> due to the Warden lied with the intent to mislead and
> to determine with accuracy of what was said at the
> first and second hearing by all parties to the
> conduction of these hearing that will enable accused
> to prepare a lawful and legal defense and it were
> brought to the attention of the IHO at the hearing and
> showing relevancy to such but such request for the
> documentary evidence was denied without consideration
> and that intentional deprivation denied [Coles] the
> right to procedural and substantive due process
> rights.

(Mem. Supp. § 2254 Pet. 12.)   In his appeal of the decision to
Warden Edmonds, Coles stated that "he knew the first two
hearings had been recorded because he had never personally
purchased a CD that had been warped or faulty."   (Edmonds
Aff. 5.)

[5] Coles contends that Officer Lewis testified differently at
every hearing.   Coles states that Officer Lewis first testified
that "flesh were seen" at the second hearing and that Officer
Lewis did not first testify that she saw him through a "'3' inch
crack in the cell door" until the third hearing.   (Mem. Supp.
§ 2254 Pet. 12.)   Coles points to these inconsistencies as
evidence of a lack of fairness.   (Id. at 12-13.)
    The Court notes that the First Hearing Report reflects that
Officer Lewis testified at that hearing that she saw flesh.
(Edmonds Aff. Encl. B, Disciplinary Offense Report 2.)   Coles,
however, seeks to cast doubt on Officer Lewis's statement that
she saw him through a three-inch crack in the cell door by

5

on [Officer Lewis's] testimony, and [having] nothing in [Coles's] defense," IHO Patton found Coles guilty. (Edmonds Aff. Encl. F, Disciplinary Offense Report 2.) IHO Patton imposed the same sentence that had been imposed at the first two hearings, to wit: 180 days loss of good time credits and 30 days isolation. (Id.)

Based on the foregoing, Coles makes four claims for relief:[6]

| Claim One | BCC personnel denied Coles procedural due process[7] when the disciplinary report did not present information sufficient to constitute fair notice of |
|---|---|

---

pointing out that "[Officer Lewis] were posted inside the control booth, not on the floor, [and did not] have a ruler to measure such from the control booth." (Mem. Supp. § 2254 Pet. 13.)

Additionally, as evidence of the conspiracy against him, Coles points out that Sergeant Martin, another BCC staff member, testified only at the second hearing. Coles avers that, at the second hearing, Sgt. Martin testified that Coles's "penis was erected when [Sgt. Martin] came to the cell door and pull it opened." (Id. at 10.) IHO Patton did not indicate in her hearing report that Sgt. Martin testified.

[6] Coles's Memorandum in Support of his § 2254 Petition consists of twenty handwritten, single spaced pages. This narrative account of Coles's three disciplinary hearings does not concisely articulate Coles's claims for relief. Nevertheless, after a full reading of Coles's submissions, the Court has culled these four claims. The Court also notes that the majority of Coles's Memorandum in Support is devoted to arguing Claim One, that BCC personnel denied him due process by presenting him with a deficient charging document.

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

                    the conduct subject to a disciplinary
                    hearing.

    Claim Two       IHO's denied Coles his right to call
                    witnesses.

    Claim Three     At the third hearing, IHO Patton denied
                    Coles access to the CD recordings of
                    the first two hearings.

    Claim Four      The second and third hearings violated
                    Coles's constitutional right against
                    double jeopardy.[8]

Coles seeks an injunction "expunging this major institutional infraction [from] the record," and his "cost[s] expended in this action." (Mem. Supp. § 2254 Pet. 16.)

## II. Analysis

### A. Due Process

The parties do not dispute that Coles enjoyed a liberty interest in vested good time credits. See Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000). Thus, prior to revoking vested good time credits, the Due Process Clause of the Fourteenth Amendment entitles Coles to the following process: (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or

---

[8] The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

staff representative if the issues are complex; and (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974).

In Claim One, Coles asserts that BCC personnel denied him due process because neither the handwritten charging document he was given on November 28, 2009 nor the typewritten charging documents he was given on January 14, 2010 and February 18, 2010, provided enough information to enable him to mount an effective defense. Coles is mistaken. A document charging an inmate with a disciplinary infraction satisfies due process if it contains "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." Sira v. Morton, 380 F.3d 57, 72 (2d Cir. 2004) (citing Wolff, 418 U.S. at 564; Taylor v. Rodriguez, 238 F.3d 188, 192-93 (2d Cir. 2001)). The charging documents here, "which identified the charged offense[ ] and the exact time when the offense[ was] alleged to have occurred, [were] more than sufficient to satisfy due process." Coor v. Stansberry, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008).

Indeed, by the third disciplinary hearing, Coles was privy to all the testimony of GCC's witnesses against him, having heard

their testimony at two previous hearings.  Thus, even assuming, arguendo, that the charging document was defective, Coles cannot show that he was prejudiced by any lack of information.  See id. (citing Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (applying harmless error analysis); Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003); Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993)).

Additionally, the Supreme Court has held "that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).  The Supreme Court admonished that ascertaining whether this standard has been satisfied does not require an independent examination of the entire record.  Id. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id. at 455-56 (citing cases).  Accordingly, Claim One will be dismissed.

B.    **Denial of Witness; Denial of Recordings**

Coles asserts that he was denied witnesses at each of his three hearings.  Coles requested allowance to call two witnesses to testify that his door had been cracked no more than two to three inches.  (Edmonds Aff. Encl. B, Unknown Witness Req. Form,

9

Jackson Witness Req. Form.)   Coles acknowledges that Officer Lewis testified at Coles's third hearing that "she saw [Coles] through a '3' inch crack in the cell door."   (Mem. Supp. § 2254 Pet. 12.)   Thus, Coles fails to show, as he must, that he was prejudiced by the IHO's denial of these witnesses.   Piggie, 344 F.3d at 678.

Coles states that, at his third hearing, he was denied access to the CD recordings of the first two hearings.   Assuming BCC personnel withheld the CD recordings of Coles's first two hearings for nefarious purposes (not because the recordings did not exist), Coles fails to state how these recordings would have assisted in his defense.   Thus, Coles fails to show that he was prejudiced by these denials.   Id.   Accordingly, Claims Two and Three will be dismissed.

### C.   Double Jeopardy

In Claim Four, Coles asserts that the second and third hearings violated his right to protection from double jeopardy. The Supreme Court has stated:

> We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "'in common parlance,'" be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings.

Hudson v. United States, 522 U.S. 93, 98-99 (1997) (emphasis in original) (citations omitted). Thus, courts have concluded the Double Jeopardy Clause does not apply to prison disciplinary actions. Anderson v. Padula, No. 0:05-3029-PMD, 2006 WL 1075003, at *4 (D.S.C. Apr. 19, 2006) (concluding the Double Jeopardy Clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge, first through an informal resolution and then through a disciplinary hearing regarding the same charge); Edwards v. Braxton, No. 7:04-CV-00550, 2005 WL 1388746, at *4 (W.D. Va. June 10, 2005) ("[T]he double jeopardy claim does not apply to . . . [prison] disciplinary hearings." (citing Breed v. Jones, 421 U.S. 519, 528 (1975))); see also Fogle v. Pierson, 435 F.3d 1252, 1262 (10th Cir. 2006) (finding that it was well-established that prison disciplinary sanctions do not implicate the Double Jeopardy Clause (citing Wirsching v. Colorado, 360 F.3d 1191, 1205 (10th Cir. 2004))); c.f. Wolff, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution . . . ."). Moreover, retrial after a successful appeal does not implicate double jeopardy concerns. Montana v. Hall, 481 U.S. 400, 402 (1987) (quoting United States v. Scott, 437 U.S. 82, 90-91 (1978)). Accordingly, Claim Four will be dismissed.

### III.  Conclusion

Respondent's Motion to Dismiss (Docket No. 18) will be granted.  Coles's claims will be dismissed with prejudice.  The petition for a writ of habeas corpus will be denied and the action will be dismissed.  Accordingly, Coles's Motion to Identify Procedure (Docket No. 25), challenging this Court's August 29, 2011 Memorandum Order denying his request for a jury trial, will be denied.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Coles has not satisfied this standard.  Accordingly, the Court denies Coles a certificate of appealability.

12

The Clerk is directed to send a copy of the Memorandum Opinion to Coles and counsel of record.

And it is so ordered.

_____/s/_____REP___
Robert E. Payne
Senior United States District Judge

Date: February 9, 2012
Richmond, Virginia

13